UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CADY ARNOLD and MILDRED B. SMITH, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. |
| vs. | ) ) | <u>1:21-cv-04496-LMM</u> |
| CAPSHAW MARKETING, LLC; CAPSHAW DEVELOPMENT COMPANY, LLC; JIM MINKEL; KEITH RUSSELL; KEVIN BAUMGARD and GAYLE  BICKHAM, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## **COMPLAINT**

Plaintiffs Cady Arnold ("**Ms. Arnold**") and Mildred B. Smith ("**Ms. Smith**")

(collectively, "**Plaintiffs**") file this complaint and show this Court as follows:

## **INTRODUCTION**

This is an action seeking recompense for the wrongful, tortious and bad faith

actions of Defendants in terminating Plaintiffs' employment, willfully violating the

FLSA, deceitfully taking Plaintiffs' real estate commissions, referring to Plaintiff (s)

by derogatory terms, such as "monkeys," and undertaking acts of defamation and intentional infliction of emotional distress.

## JURISDICTION

### 1.

This case raises a federal question under the Fair Labor Standards Act ("**FLSA**"), 29 U.S.C. § 201 *et seq.*, giving this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

### 2.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and/or 28 U.S.C. § 1391(b)(2) because Defendants conduct substantial business and reside in this judicial district.

## THE PARTIES

### 3.

Ms. Arnold and is a citizen of the State of Georgia and resides within the district for the Northern District of Georgia, Atlanta Division.

### 4.

Ms. Smith is a citizen of the State of Georgia and resides within the district for the Northern District of Georgia, Atlanta Division.

5.

Plaintiffs were at all relevant times employees of Defendant Capshaw Marketing, LLC, a for-profit limited liability company with a principal place of business located at 450 Racetrack Road, McDonough, Georgia, 30252 ("**Capshaw**"). Capshaw may be served with process via its registered agent: Keith F. Russell, 450 Racetrack Road, McDonough, Georgia 30252.

6.

Defendant Capshaw Development Company, LLC, ("**Capshaw Development**") is a for-profit limited liability company with a principal place of business located at 450 Racetrack Road, McDonough, Georgia, 30252 ("**Capshaw**"). Capshaw may be served with process via its registered agent: Keith F. Russell, 450 Racetrack Road, McDonough, Georgia 30252.

7.

Jim Minkel ("**Mr. Minkel**") resides within the district for the Northern District of Georgia, Atlanta Division. Mr. Minkel is a corporate officer with operational control of Capshaw. Mr. Minkel is involved in the day-to-day operations of Capshaw and has direct responsibility for the supervision of the employees, including the Plaintiffs. Therefore, Mr. Minkel is an "employer" within the meaning of the FLSA.

8.

Defendant Keith Russell ("**Mr. Russell**") resides within the district for the Northern District of Georgia, Atlanta Division. Mr. Russell is a corporate officer with operational control of Capshaw and Capshaw Development. Mr. Russell is involved in the day-to-day operations of Capshaw and has direct responsibility for the supervision of the employees, including the Plaintiffs. Therefore, Mr. Russell is an "employer" within the meaning of the FLSA.

9.

Defendant Kevin Baumgard ("**Mr. Baumgard**") resides within the district for the Northern District of Georgia, Atlanta Division. Mr. Baumgard is a corporate officer with operational control of Capshaw and Capshaw Development. Mr. Baumgard is involved in the day-to-day operations of Capshaw and has direct responsibility for the supervision of the employees, including the Plaintiffs. Therefore, Mr. Conner is an "employer" within the meaning of the FLSA.

10.

Defendant Gayle Bickham ("**Ms. Bickham**") resides within the district for the Northern District of Georgia, Atlanta Division and is subject to the jurisdiction of this Court.

11.

Capshaw's gross income exceeds $500,000.00 per year.

12.

At all relevant times, Capshaw and/or Capshaw Development, Mr. Minkel, Mr. Russell, and Mr. Baumgard (hereinafter collectively the "**FLSA Defendants**"), and their employees, including Plaintiffs, were engaged in interstate commerce within the meaning of the FLSA and 29 U.S.C. § 207.

## GENERAL ALLEGATIONS

13.

Plaintiffs allege that at all times, Defendants and their servants, employees, co-venturers, and co-conspirators were acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

14.

Plaintiffs allege that at all times, the conduct of Defendants described herein was oppressive and malicious; with a conscious disregard of employee rights; and with intent, design, and purpose of injuring its employees. Plaintiffs are further informed and believe that Defendants, through their owners, officers, managing

Plaintiffs and/or its supervisors, authorized, condoned, and or ratified the unlawful conduct. Thus, Defendants' actions were intentional.

## FACTS

### 15.

The Plaintiffs are licensed real estate salespersons in Georgia, and employees of Capshaw and/or Capshaw Development.

### 16.

Throughout the period of Plaintiffs' employment, the FLSA Defendants willfully misclassified Plaintiffs as independent contractors.

### 17.

The FLSA Defendants required mandatory office hours enforced by a fine system, which did not permit Plaintiffs to leave their assigned model homes for any reason, including grabbing a quick lunch. Plaintiffs worked exclusively from the model home of the community in which they worked at the direction of, and using equipment provided by, Defendants.

### 18.

The FLSA Defendants controlled the manner and method in which the Plaintiffs sold Capshaw and Capshaw Development homes.

19.

The FLSA Defendants were engaged in the marketing and selling of finished lots, which constituted the integral part of Capshaw's business.

20.

While working for Defendants, the Plaintiffs were regularly two of Capshaw's top agents. Although the Plaintiffs excelled, Capshaw and/or Capshaw Development treated the Plaintiffs poorly in an unlawful way.

21.

The Plaintiffs both routinely worked over forty (40) hours a week, as required by Defendants, but never received overtime at the rate of one-and-one half their regular rate, as is required by the FLSA.

22.

The FLSA Defendants knew the hours Plaintiffs were required to be on-site.

23.

The FLSA Defendants would contact Plaintiffs after regular work hours and during weekends with work requests.

24.

The FLSA Defendants knew or should have known that Plaintiffs worked substantial hours in excess of forty (40) per week.

25.

During certain periods, the FLSA Defendants also failed to pay the Plaintiffs an amount commiserate to minimum wage for the work they performed for Capshaw.

26.

Capshaw has exhibited a pattern and practice of intentionally misclassifying employees as independent contractors and then depriving such employees of their hard-earned commissions through acts of bad faith and deceit.

**FACTS SPECIFIC TO MS. ARNOLD**

27.

The FLSA Defendants employed Ms. Arnold from August 8, 2020 to March 11, 2021, as an exclusive real estate agent. A true and correct copy of Ms. Arnold's agreement with Capshaw ("**Arnold Agreement**") is attached hereto as Exhibit "A."

28.

The FLSA Defendants assigned Ms. Arnold exclusively to the Laurel Park Community ("**Laurel Park**").

29.

In November 2020, a Capshaw employee told Ms. Arnold that they were surprised Capshaw hired her for Laurel Park because he thought Capshaw wanted to hire a white person for the position instead.

30.

On January 4, 2021, Ms. Yang, a managerial representative of Capshaw told Ms. Arnold and several other black agents that Capshaw was her "circus," and the black agents were her "monkeys."

31.

On February 17, 2021, despite enduring the poor, inappropriate treatment from Capshaw and being a top real estate agent for the company, Capshaw told Ms. Arnold that she was "benched" and instructed Ms. Arnold to not return to work at Laurel Park.

32.

Capshaw did not notify Ms. Arnold what "benching" meant until nearly a month later in an email from Mr. Cy Conner:

From: **Cy Conner** <cy@capshawhomes.com>
Date: Thu, Mar 4, 2021 at 3:29 PM
Subject: Cady Arnold Laurel Park Under Contracts
To: Cady Arnold <cady@capshawhomes.com>
Cc: Jim Minkel <jim@capshawhomes.com>, Yuni Yang <yuni@capshawhomes.com>

Cady,

  Just to clarify. Being "on the bench" only means you cannot take new business, not give up on maintaining current buyers. It's in yours and Capshaw's best interest that the buyers under contract are still being proactively reached out to and updated. At the very least, returning calls and emails. With recent issues with some of your buyers, I'd make a point to call and check in and update them (not LP46 or LP71). I've attached current builder report.

 Also, with recent issues with LP-46, there will be some commission lost due to builder concessions. I'd double check on contracts written before our upgrade walkthrough.

  You got this. Just focus on MLS and nurture current buyers (regardless if inherited, still pays). Donna came off the bench. You can too.


--
Cy Conner
Regional Sales Manager
Capshaw Marketing, LLC
450 Racetrack Road
McDonough, GA 30252
Office: 678-782-6060
Fax: 678-782-5201

## 33.

The Defendant(s) deprived Ms. Arnold from working on and receiving commissions for new buyers while still requiring her to work exclusively for Capshaw and Capshaw's existing buyers at Laurel Park.

## 34.

Defendant(s) also instructed Ms. Arnold to change her hair, and inappropriately called her "Jamaican girl" and "eyebrows."

35.

Defendant(s) forced many of the homebuyers from which Ms. Arnold would have received commissions to terminate their agreements to deprive Ms. Arnold of her commissions. Defendants owe Ms. Arnold at least $246,953.90 in unpaid commissions, $11,277.68 in unpaid overtime, $16,675.00 in unpaid minimum wage, plus, liquidated damages, interest, attorneys' fees and costs.

**FACTS SPECIFIC TO MS. SMITH**

36.

Capshaw employed Ms. Smith from February 3, 2020, to December 11, 2020, as an exclusive real estate agent. A true and correct copy of Ms. Smith's agreement with Capshaw ("**Smith Agreement**") is attached hereto as Exhibit "B."

37.

Capshaw assigned Ms. Smith to the Gates at Hastings Bridge and The Orchard communities.

38.

Capshaw's management made fun of Ms. Smith's vision issues caused by her diabetes at monthly sales meetings and have generally treated Capshaw's African American employees in a racist and inappropriate way.

39.

In October 2020, Capshaw's management told Ms. Smith in a sales meeting that since she had worked so hard, she could take some time off.

40.

Ms. Smith took a two-week vacation that was scheduled for December 2, 2020, to December 14, 2020.

41.

On Saturday, December 11, 2020, Ms. Smith received a phone call from a Capshaw manager that Capshaw was letting her go for no discernible reason.

42.

After Capshaw terminated Ms. Smith's employment, Capshaw pushed back and delayed Ms. Smith's closings to deprive her of her commissions under the Agreement. Defendants owe Ms. Smith at least $98,526.50 in unpaid commissions, $54,775.24 in unpaid overtime, $13,775.00 in unpaid minimum wage, plus liquidated damages, interest, attorneys' fees and costs.

**COUNT I**
**DEFENDANTS' VIOLATION OF FLSA BY FAILURE TO**
**PAY MINIMUM WAGE**

43.

Plaintiffs repeat and reallege paragraphs 1-42 as if more fully set forth herein.

44.

Plaintiffs were employees of the FLSA Defendants who were engaged in commerce or in the production of goods for commerce.

45.

The FLSA Defendants controlled the time, manner, and method of Plaintiffs' employment.

46.

During certain periods, the Plaintiffs did not receive payments commiserate to minimum wage for the work performed for the FLSA Defendants.

47.

The FLSA Defendants knew that Plaintiffs were subject to minimum wage pay and refused to pay wages equal to minimum wage to Plaintiffs.

**COUNT II**
**DEFENDANTS VIOLATION OF FLSA BY FAILURE TO PAY OVERTIME**

48.

Plaintiffs repeat and reallege paragraphs 1-47 as if more fully set forth herein.

49.

Plaintiffs were employees of the FLSA Defendants who were engaged in commerce or in the production of goods for commerce.

50.

Plaintiffs were required to work in excess of forty (40) hours per week.

51.

The FLSA Defendants knew that Plaintiffs were subject to overtime pay.

52.

The FLSA Defendants knew that Plaintiffs had worked significantly more than 40 hours per week.

53.

Plaintiffs were not provided compensation for their overtime work.

## COUNT III
## QUANTUM MERUIT/UNJUST ENRICHMENT

54.

Plaintiffs repeat and reallege paragraphs 1-53 as if more fully set forth herein.

55.

The Arnold Agreement and Smith Agreement states the following procedure for an agent's commissions after the date of termination:

(c) Upon termination of this Agreement, Associate shall be entitled to his or her Commission, on real estate transactions which were under an executed contract for sale prior to said termination date, and which close and are funded as follows:

| | | |
|---|---|---|
| 1 to 30 Days from Termination of this Agreement | 100% | Less $500 Trailing Fee |
| 31 to 60 Days from Termination of this Agreement | 50% | Less $500 Trailing Fee |
| 61 or more Days from Termination of this Agreement | 0% | |

56.

Defendant Capshaw and/or Capshaw Development improperly interfered with contracts of third parties so as to unfairly manipulate the timeline when Plaintiffs' commissions would be earned and payable.

57.

Defendant Capshaw and/or Capshaw Development has failed to provide commission payments to Plaintiffs.

58.

Defendant Capshaw and/or Capshaw Development wrongfully obtained commissions of agents by artfully and deceitfully terminating agents when they have secured agreements in advance of the date of termination so that Defendants can pay trailing fees of $500 in lieu of the full commissions earned by agents Defendants have terminated.

59.

Defendants Capshaw and/or Capshaw Development have deprived Plaintiffs and other terminated agents of commissions through bad faith terminations.

60.

Because of their wrongful acts, Defendant(s) received a benefit, at each Plaintiffs' expense, under circumstances that would make it unjust for Defendant(s) to retain the benefit without paying Plaintiffs for their efforts.

61.

Defendant(s) have exhibited a pattern and practice of improperly deriving commissions of agents through terminations and other schemes.

## COUNT IV
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

62.

Plaintiffs repeat and reallege paragraphs 1-61 as if more fully set forth herein.

63.

"Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement." *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533 (2013).

64.

"Good faith is a shorthand way of saying substantial compliance with the spirit, and not merely the letter, of a contract." *Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc.*, 251 Ga. App. 91, 95 (2001).

65.

Defendant Capshaw and/or Capshaw Development have breached their implied duty of good faith and fair dealing by "benching" Ms. Arnold and terminating Ms. Arnold and Ms. Smith in bad faith to deprive them of their commissions.

66.

Defendant Capshaw and/or Capshaw Development consistently recognized Plaintiffs as top agents for Defendants, but they were improperly used by Defendants to secure agreements on houses with no intention of paying commissions Plaintiffs earned for their work and expertise.

**COUNT V**
**THEFT BY DECEPTION AND**
**CONSPIRACY TO COMMIT THEFT BY DECEPTION**

67.

Plaintiffs repeat and reallege paragraphs 1-66 as if more fully set forth herein.

68.

Plaintiffs earned commissions for homes that were set to close after their termination.

69.

Plaintiffs were the procuring and predominant cause of the ultimate sale of the homes.

70.

Defendant(s) worked together to use deceptive means to wrongfully interfere with the contracts between Plaintiffs and prospective homebuyers with the express purpose to wrongfully deprive Plaintiffs of their commissions.

71.

Defendants contacted homebuyers under contract with the Plaintiffs to entice them to enter into contracts with other agents so that Defendants could deprive Plaintiffs of their commissions.

72.

Defendant(s) exhibited improper actions and wrongful conduct without privilege by forcing homebuyers under contract with Plaintiffs to delay closing dates or terminate contracts altogether. Defendants also engaged in illegal steering which also caused Plaintiffs to lose commissions, and which terminated contracts with Plaintiffs.

73.

Defendant(s) acted purposely and with malice with the intent to injure the Plaintiffs.

74.

Defendant(s) had a willful scheme to induce breaches of contractual obligations and cause third parties to discontinue and fail to enter anticipated business relationships from which the Plaintiffs would benefit.

75.

Defendant(s)' acts of conspiracy and theft by conversion breached a private duty to Plaintiff and caused damage to the Plaintiffs by depriving them of their commissions.

## COUNT VI
## VIOLATION OF BROKERAGE REATIONSHIPS IN REAL ESTATE TRANSACTIONS ACT (BRETTA)

76.

Plaintiffs repeat and reallege paragraphs 1-75 as if more fully set forth herein.

77.

Defendant Capshaw and/or Capshaw Development wrongfully interfered with the contracts for the sale of homes with the express purposes of depriving Plaintiffs of earned commissions.

78.

Defendant Capshaw and/or Capshaw Development have received and retained money for the sale of homes for which Plaintiffs were the procuring cause.

79.

Demand for repayment has been made by Plaintiffs to Defendant Capshaw and/or Capshaw Development, and such demand was refused.

## COUNT VII
## DEFAMATION

80.

Plaintiffs repeat and reallege paragraphs 1-79 as if more fully set forth here

81.

Defendant Ms. Bickham made defamatory statements regarding Ms. Arnold to third party purchasers alleging that Ms. Arnold "didn't know what she was doing" and that Ms. Arnold "was giving false information" to purchasers.

82.

Ms. Bickham's statements were made with the approval and authorization of Capshaw and/or Capshaw Development, Mr. Baumgard, Mr. Minkel, and Mr. Russell.

83.

The statements false and intended to paint Ms. Arnold in a negative light.

84.

Ms. Bickham's statements were to third party purchasers and are not privileged communication.

85.

Due to Ms. Bickham's statements, certain third-party purchasers canceled contracts with Ms. Arnold.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86.

Plaintiffs repeat and reallege paragraphs 1-85 as if more fully set forth herein.

87.

Defendant(s)', and each Defendant's individually exhibited a concerted pattern of discriminatory racial comments, failure to provide fair working conditions, thefts of commissions and acts of defamation were (1) intentional or reckless and (2) extreme and outrageous.

88.

Due to Defendant(s)' actions, Plaintiffs have suffered severe emotional distress.

## COUNT IX
## ATTORNEYS FEES, LIQUIDATED DAMAGES AND PUNIIVE DAMAGES

89.

Plaintiffs repeat and reallege paragraphs 1-88 as if more fully set forth herein.

90.

Pursuant to U.S.C.A. § 216(b), any employer who violates the provisions of 29 U.S.C.A. §§ 206 and 207 shall be liable to the employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages.

91.

Defendant(s) willfully violated the provisions of 29 U.S.C.A. §§ 206 and 207 and are liable to the Plaintiffs in the amount of their unpaid minimum wages and unpaid overtime compensation, and in an additional equal amount as liquidated damages.

92.

Defendant(s) acted in bad faith, were stubbornly litigious and caused Plaintiffs unnecessary trouble and expense and Plaintiffs should therefore be entitled to their reasonable attorneys' fees and costs of litigation.

93.

Defendant(s)' acts as described herein were intentional, reckless, and malicious and punitive damages should be assessed against each Defendant in the amount of at least $250,000 to deter such outrageous conduct in the future.

**WHEREFORE**, Plaintiffs pray of this honorable Court for judgment against Defendants as follows:

1. For Defendants to pay Plaintiffs their wages, interest and attorney's fees recoverable at law due to Defendants' willful failure to pay minimum wage;

2. For Defendants to pay Plaintiffs their wages, interest and attorney's fees recoverable at law due to Defendants' willful failure to pay overtime;

3. Judgment and damages in favor of Plaintiffs based upon equity;

4. Judgment and damages in favor of Plaintiffs based upon Defendants' breach of contracts obligations with Plaintiffs;

5. Judgment and damages in favor of Plaintiffs based upon clams of conspiracy and theft by deception;

6. Judgment and damages in favor of Plaintiffs based upon violations of BRETTA;

7. Judgment and damages in favor of Plaintiffs based upon claims of defamation;

8. Judgment and damages in favor of Plaintiffs based upon claims of intentional infliction of emotional distress;

9. For Defendants to pay all costs of this action, including reasonable attorneys' fees as required by law;

10. For an award of punitive damages against Defendant(s);

11. For trial by jury of all issues; and

12. For any further relief this Court deems equitable and just.

Respectfully submitted this 29th day of October, 2021.

**FREED GRANT LLC**

| | |
|---|---|
| 101 Marietta Street, NW | By:   /s/ *Gary S. Freed* |
| Suite 3600 | Gary S. Freed |
| Atlanta, Georgia 30303 | Georgia Bar No. 275275 |
| Telephone:   (470) 839-9300 | Thomas C. Grant |
| Facsimile:    (470) 839-9301 | Georgia Bar No. 297455 |
| gary@freedgrant.com | Ke "Kim" Zhang |
| tom@freedgrant.com | Georgia Bar No. 310835 |
| kim@freedgrant.com | |

**BRISKIN, CROSS & SANFORD, LLC**

| | |
|---|---|
| 33 S Main Street | By:   /s/ *Mary Trachian-Bradley* |
| Suite 300 | Mary Trachian-Bradley |
| Alpharetta, Georgia 30009 | Georgia Bar No. 774440 |
| Telephone:  (770) 410-1555 | |
| Facsimile:  (770) 410-3281 | |
| mtrachian@briskinlaw.com | |